IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TERESA T. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 06-0791-WS-B |
| | ) | |
| INFIRMARY HEALTH SYSTEM, *d/b/a* | ) | |
| MOBILE INFIRMARY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on plaintiff's Motion to Remand (doc. 9) and defendants'
Motion to Dismiss (doc. 5). Both motions have been briefed and are ripe for disposition.

**I.     Background.**

On or about October 6, 2006, plaintiff Teresa T. Hall filed a Complaint in the Circuit
Court of Mobile County, Alabama, against three defendants, to-wit: Infirmary Health System,
d/b/a Mobile Infirmary ("Mobile Infirmary"); Cathy Burch; and Kim Gibson.[1]  The Complaint
arose from the termination of Hall's employment as a phlebotomist at Mobile Infirmary on
October 8, 2004, which Hall attributes to her medical absences she incurred to undergo seven
abdominal surgeries from January 2004 through September 2004.  According to the Complaint,
Mobile Infirmary's termination of her employment was malicious and in bad faith, was in
violation of Mobile Infirmary's own policies, and was contrary to law in various respects.  On

---

[1]     The Complaint also purports to name 100 fictitious defendants.  Fictitious party
pleading is not generally permitted in federal court.  *See* Rule 10(a), Fed.R.Civ.P. (caption of
complaint "shall include the names of all the parties"); 28 U.S.C. § 1441(a); *Rommell v.
Automobile Racing Club of America, Inc.*, 964 F.2d 1090, 1098-99 n.14 (11th Cir. 1992); *Collins
v. Fingerhut Companies, Inc.*, 117 F. Supp.2d 1283 n.1 (S.D. Ala. 2000) ("fictitious party
pleading is not generally recognized under the Federal Rules of Civil Procedure"); *Weeks v.
Benton*, 649 F. Supp. 1297, 1298 (S.D. Ala. 1986) ("Fictitious party practice is not authorized by
the Federal Rules of Civil Procedure or any other federal statute.").  Because the Court finds
*infra* that removal was proper and that federal jurisdiction lies, plaintiff's claims against
fictitious defendants are **dismissed**.

that basis, the Complaint purports to assert the following state-law causes of action against defendants: (i) wrongful discharge of at-will employee; (ii) breach of contract relating to terms of employee handbook; (iii) outrage/intentional infliction of emotional distress; (iv) negligence/wantonness; (v) negligent/wanton supervision; (vi) fraud in making false statements to the Alabama Department of Industrial Relations pertaining to Hall's discharge; (vii) conversion of Hall's retirement contributions on deposit with Mobile Infirmary; and (viii) civil conspiracy to violate Alabama Worker's Compensation Act.

On November 20, 2006, defendants filed a Notice of Removal (doc. 1) in this District Court, pursuant to 28 U.S.C. §§ 1331 and 1441.  Defendants contend that federal question jurisdiction exists, notwithstanding the facially state-law character of all causes of action recited in the Complaint, because Count VII is subject to complete preemption under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").  After removing this action, defendants filed a Motion to Dismiss (doc. 5), arguing that all eight claims in the Complaint should be dismissed under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted.  On January 26, 2007, plaintiff countered by filing a Motion to Remand (doc. 9) in which she asserted that federal subject matter jurisdiction is wanting because her claims arise exclusively under state law, such that no federal question is presented.

Although the Motion to Dismiss is the earlier filed of the two motions, chronologically speaking, the Court's analysis begins with the threshold jurisdictional question raised by plaintiff's Motion to Remand.  Absent federal jurisdiction, this Court lacks the power to decide the Motion to Dismiss, and must immediately remand this action to state court without reaching the question of whether Hall has stated cognizable claims against defendants.  *See Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (when subject matter jurisdiction is deemed lacking, "the court's sole remaining act is to dismiss the case for lack of jurisdiction"); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("the district court should have resolved the issue of subject matter jurisdiction before reaching the merits of any other issue" because to reach merits of pending motion in removed case where jurisdiction may be lacking would deprive state court of its right to resolve controversies in its own courts).

-2-

II.     **Motion to Remand.**

    A.     *Legal Standard.*

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction.  *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction.").  Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  *See University of South Alabama*, 168 F.3d at 411 (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is not absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

    B.     *Analysis.*

Plaintiff's Motion to Remand is straightforward.  She correctly observes that 28 U.S.C. § 1331 confers federal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  *Id.*  She also accurately notes that none of the eight causes of action set forth in the Complaint purport on their face to invoke the Constitution, laws or treaties of the United States.  Citing various case authorities for the proposition that a plaintiff is the master of her own claims and that a plaintiff may avoid federal jurisdiction by exclusive reliance on state law, Hall asserts that the Complaint is not subject to removal because the well-pleaded complaint proceeds exclusively on state-law theories of relief.

Hall's reliance on the "well-pleaded complaint" rule overlooks the critical, narrow exception of "super, or complete, preemption, existing when Congress has so fully legislated an area of law such that a plaintiff's state law claims filed in state court are 'necessarily federal in character' and removable based on federal question jurisdiction."  *Ervast v. Flexible Products Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003).  In the ERISA context, the Eleventh Circuit has declared that "some claims are superpreempted, and others are not."  *Butero v. Royal Maccabees*

-3-

*Life Ins. Co.*, 174 F.3d 1207, 1212 (11ᵗʰ Cir. 1999).  More precisely, "ERISA superpreemption exists only when the plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a)," which creates a civil enforcement cause of action for aggrieved persons to recover plan benefits. *Butero*, 174 F.3d at 1212.  Where ERISA superpreemption exists, "state law claims that seek relief available under ERISA are recharacterized as ERISA claims and arise under federal law." *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1178 (11ᵗʰ Cir. 2006); *see also Ervast*, 346 F.3d at 1014 ( "Super preemption ... ***recharacterizes*** the state law claim into a federal claim under § 1132."). Simply put, then, if the conversion cause of action in Hall's Complaint is superpreempted by ERISA, then that facially state law claim is transformed into a federal claim under § 1132, and the case is properly removable via federal question jurisdiction.  *See Ervast*, 346 F.3d at 1014.[2]

In the Eleventh Circuit, state law claims are completely preempted by ERISA when the following four elements are satisfied: "(1) There must be a relevant ERISA plan; (2) the plaintiff must have standing to sue under that plan; (3) the defendant must be an ERISA entity; and (4) the complaint must seek compensatory relief akin to that available under § 1132(a), which is normally a claim for benefits under the plan."  *Jones*, 457 F.3d at 1178; *see also Butero*, 174 F.3d at 1212 (announcing test).[3]

The Complaint references Hall's "personal retirement account," the funds of which are allegedly held or controlled by Mobile Infirmary.  (Complaint, ¶ 17.)  The Complaint also mentions "plaintiff's retirement contributions which are on deposit with Mobile Infirmary and/or it's [*sic*] duly authorized representative."  (*Id.*, ¶ 59.)  According to the Complaint, Hall has demanded the return of her retirement contributions but Mobile Infirmary has refused to disgorge those funds without the consent of her estranged husband.  Taken collectively, these allegations demonstrate that the conversion cause of action satisfies all four elements of the

---

[2]      In this respect, plaintiff's invocation of the general rule that cases cannot be removed to federal court on the basis of preemption is misguided, as superpreempted claims plainly confer federal removal jurisdiction.

[3]      Although the four-pronged *Butero* test is well established in this Circuit and is of central importance to the jurisdictional issues presented by plaintiff's Motion to Remand, neither party's briefs address or even mention that test.  Notwithstanding this omission, the Court must consider the *Butero* rule given its obvious jurisdictional implications here.

superpreemption doctrine.  First, an employer-sponsored retirement plan of the type described in the Complaint is unquestionably an ERISA plan.  *See* 29 U.S.C. § 1002(2) (defining "employee pension benefit plans" covered by ERISA as including any plan, fund or program established or maintained by an employer, when such plan, fund or program provides retirement income to employees or results in deferral of income for periods extending to or beyond termination of covered employment); *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1265 (11th Cir. 2006) (ERISA plan is established if reasonable person could ascertain from surrounding circumstances the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits).  Second, if, as Hall alleges in her Complaint, she was a participant in Mobile Infirmary's retirement plan, then she has standing to assert a variety of claims under that plan. *See* 29 U.S.C. § 1132(a)(1), (2), (3), (4).  Third, inasmuch as Hall maintains that Mobile Infirmary controlled the plan assets and determined her rights to plan benefits, the Complaint raises a clear inference that Mobile Infirmary is an ERISA entity.  *See Morstein v. National Ins. Services, Inc.*, 93 F.3d 715, 722-23 (11th Cir. 1996) ("ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan.").  Fourth, inasmuch as Count VII of the Complaint seeks compensatory damages to recover Hall's contributions to the plan, it unquestionably seeks relief akin to that available under § 1132(a).  *See Ervast*, 346 F.3d at 1014 (fourth prong of *Butero* is satisfied if state law claim seeks recovery of benefits due under plan, enforcement of plaintiff's rights under plan, or clarification of future plan benefits due).

In light of the foregoing (none of which plaintiff has made any attempt to rebut in briefing the Motion to Remand), the undersigned readily concludes that the conversion cause of action set forth in Count VII of the Complaint is subject to ERISA superpreemption.  As such, that cause of action is automatically converted into a federal claim, notwithstanding the state-law gloss applied by Hall, and supports removal via federal question jurisdiction.  Federal jurisdiction being conferred by 28 U.S.C. § 1331, removal was proper.  Plaintiff's Motion to Remand is therefore **denied**.

### III.    Motion to Dismiss.

Defendants' Motion to Dismiss contends that none of the eight causes of action set forth in the Complaint is viable under Alabama law, as a matter of law.  Defendants therefore seek dismissal of each of those claims for failure to state a claim upon which relief can be granted.

Because the parties' arguments are claim-specific, the Court will apply the requisite Rule 12(b)(6) standard on a count-by-count basis.

### A.    Legal Standard.

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421-22, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969).  A motion to dismiss may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986).  The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a), Fed.R.Civ.P.  Moreover, the Court must, "at this stage of the litigation, . . . accept [plaintiff's] allegations as true." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984); *Stephens v. HHS*, 901 F.2d 1571, 1573 (11th Cir. 1990); *cf. South Florida Water Management Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996) (conclusory allegations and unwarranted deductions of fact are not deemed true on a motion to dismiss).  The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.  A plaintiff must meet only an "exceedingly low" threshold to withstand a Rule 12(b)(6) motion.  *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003).

### B.    Analysis.

#### 1.    Wrongful Discharge (Count I).

In the first cause of action, Hall maintains that "the general circumstances and facts surrounding the termination of her at-will employment ... [were] violative of the public policy of The State of Alabama and thus unlawful."  (Complaint, ¶ 20.)

"[T]he rule is well settled in Alabama that an employee contract at will may be terminated by either party with or without cause or justification."  *Hoffman-La Roche, Inc. v. Campbell*, 512 So.2d 725, 728 (Ala. 1987); *see also Ex parte Amoco Fabrics and Fiber Co.*, 729 So.2d 336, 339 (Ala. 1998) ("The bedrock principle of Alabama employment law is that, in the absence of a contract providing otherwise, employment in this state is at-will.").  Where this

baseline rule applies, it is of no legal consequence whether an employee is discharged "for a good reason, a wrong reason, or no reason at all." *Wal-Mart Stores, Inc. v. Smitherman*, 872 So.2d 833, 838 (Ala. 2003) (citations omitted); *Scott Bridge Co. v. Wright*, 883 So.2d 1221, 1223 (Ala. 2003) (employee at will may be discharged for any reason, even a "wrong" reason).

Count I of Hall's Complaint acknowledges that her employment at Mobile Infirmary was at will; however, she seeks to hold defendants liable on the theory that the termination of her employment was violative of public policy. Alabama case law erects an insurmountable obstacle to such a contention. Indeed, the Alabama Supreme Court has steadfastly refused to create a public policy exception to the employee at will doctrine. *See Wright v. Dothan Chrysler Plymouth Dodge, Inc.*, 658 So.2d 428, 431 (Ala. 1995) (declining plaintiff's invitation to create a public policy exception to the employment at will doctrine, reasoning that any such exception should be created by the legislature).[4] On its face, then, Hall's wrongful discharge theory is foreclosed by a long, unbroken line of Alabama precedent. If, as Count I pleads, Hall was an at-will employee, then Mobile Infirmary had the right under Alabama law to terminate her employment for any reason, barring a state or federal statute circumscribing that right. Hall has identified no statute that might afford her protection from termination under the circumstances described in the Complaint.[5] Accordingly, plaintiff's first cause of action plainly fails to state a

---

[4] *See also Dykes v. Lane Trucking, Inc.*, 652 So.2d 248, 250 (Ala. 1994) ("We also note Dykes's suggestion that we should carve out a public policy exception to the employee-at-will doctrine; however, we again decline to modify the employee-at-will doctrine by recognizing such an exception to it in this case."); *Grant v. Butler*, 590 So.2d 254, 256 (Ala. 1991) ("Through the years, this Court has steadfastly declined to modify the employee-at-will doctrine by recognizing a cause of action sounding in tort for the wrongful termination of an employment contract when the employer's actions were in contravention of this state's public policy, but has chosen, instead, to rely upon legislative action to ameliorate some of the harshness of the employee-at-will doctrine."); *Hoffman-La Roche*, 512 So.2d at 728 (observing that Alabama courts' refusal to engraft public policy exception onto at-will doctrine applied even where employee had been fired for refusing to commit a criminal act).

[5] Plaintiff would analogize this case to Alabama decisions recognizing a cause of action for wrongful discharge where an employee was fired for filing a workers' compensation claim. (Plaintiff's Brief (doc. 9), at 11.) This argument misses the point. In the workers' compensation context, the Alabama legislature has stepped in to create a statutory remedy. *See* Ala. Code § 25-5.11.1. It has not done so here. Absent such legislative action, an at-will

claim upon which relief can be granted.

> 2.      *Breach of Contract (Count II).*

In her second cause of action, Hall pleads (in the alternative to her wrongful discharge claim) that the terms of the employee handbook issued by Mobile Infirmary amounted to a written contract of employment.  The Complaint pleads that the handbook was sufficient to constitute a binding offer of employment, that Mobile Infirmary communicated that offer to Hall, that Hall accepted such offer by retaining employment thereafter, and that defendants breached the contract by terminating her in violation of the letter and spirit of the terms of the handbook.  (Complaint, ¶¶ 25-27.)

Notwithstanding the at-will default rule, Alabama law provides that policies set forth in an employee manual issued to an employee can become a binding promise if the employee accepts it by continuing to work when she is not otherwise obligated to do so.  *Hoffman-La Roche*, 512 So.2d at 733; *see Harper v. Winston County*, 892 So.2d 346, 351 (Ala. 2004) ("an employee handbook can represent a binding contract obligating an employer to satisfy certain conditions precedent to dismissing an employee"); *Ex parte Graham*, 702 So.2d 1215, 1218 (Ala. 1997) (recognizing that at-will relationship can be modified by handbook provisions in which employer promises not to discharge employee except by specified procedures).  For a handbook to be contractually binding on an employer, "the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy. ... [I]f the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook."  *Hoffman-La Roche*, 512 So.2d at 734.

The Complaint pleads all necessary elements to establish a cause of action for breach of an employment contract.  Nonetheless, defendants move for dismissal of Count II, reasoning that Hall's "sparse allegations" are insufficient because they do not identify the specific contractual obligations breached.  (Defendants' Brief (doc. 6), at 3.)  In so arguing, defendant would impose

---

employee cannot recover damages in Alabama on a wrongful discharge theory.  *See Tyson Foods, Inc. v. McCollum*, 881 So.2d 976, 983 n.14 (Ala. 2003) (at-will employee "has no right to recover damages for wrongful discharge, unless the Legislature has created such a right").

a pleading requirement on Hall in excess of that contemplated by the applicable rules of civil procedure.  Indeed, such a requirement would be contrary to the "notice pleading" provisions of Rule 8(a)(1) of the Alabama Rules of Civil Procedure, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.*; *see also Cain v. Howorth*, 877 So.2d 566, 575 (Ala. 2003) ("Under Rule 8, Ala. R. Civ. P., a complaint is sufficient if it puts the defendant on notice of the claims against him."); *Bryant v. West Alabama Health Services, Inc.*, 669 So.2d 941, 945 (Ala.Civ.App. 1995) (pleading is sufficient if it gives defendant fair notice of claim, as factual details of claim will be provided during discovery process).[6]

The Court understands that defendants would prefer to have more detail about the second cause of action at this time.  But Rule 8(a) does not oblige a plaintiff to plead its claims with the greatest possible specificity.  *See In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) ("For better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.").  Indeed, "the alleged facts need not be spelled out with exactitude, nor must recovery appear imminent."  *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A.*, 711 F.2d 989, 995 (11th Cir.1983).  The threshold of sufficiency for a complaint to satisfy Rule 8 is "exceedingly low."  *Id.*[7]  Besides, the discovery process will afford defendants with ample opportunity to explore the factual basis of plaintiff's claims.  For now, the second cause of

---

[6]     *See generally Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (rejecting notion that discrimination complaint must plead each element of *prima facie* case to satisfy Rule 8 "notice pleading" standards); *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) ("the liberal notice pleading standards embodied in Federal Rule of Civil Procedure 8(a)(2) do not require that a plaintiff specifically plead every element of a cause of action").

[7]     That does not imply, of course, that further detail as to plaintiff's claims would not be of assistance in narrowing the issues at an early stage.  However, the liberal pleading requirements of Rule 8 simply do not require plaintiff to provide greater specificity than she did. In the sage words of Justice Powell, "[l]iberal pleading rules have both their merit and their price."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 384, 102 S.Ct. 1114, 1127 (1982) (Powell, J., concurring).  This case demonstrates the price of those rules, which is borne by both litigants and the Court in order to enjoy their merit in other contexts.

-9-

action is sufficiently pleaded because it puts defendants on fair notice of the claim by identifying the contract and offering allegations as to when and how it was breached; therefore, the second cause of action will not be dismissed as to Mobile Infirmary at this time.

That said, defendants correctly point out that Count II must be dismissed to the extent that it purports to state a cause of action against the individual defendants, Cathy Burch and Kim Gibson.  Assuming plaintiff is correct that the handbook created an employment contract, that contract was between Hall and Mobile Infirmary.  As Burch and Gibson could not conceivably be parties to that contract, they cannot be liable in contract for its breach.  The Motion to Dismiss is therefore **granted** to the extent that Count II would proceed against Burch and Gibson, but is **denied** as to the remainder of Count II.

### 3.     *Outrage (Count III).*

The third cause of action alleges that defendants' conduct in relation to the termination of plaintiff's employment constitutes the tort of outrage, inasmuch as it was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and was so atrocious as to be utterly intolerable in a civilized society.  (Complaint, ¶¶ 32-37.)

Under Alabama law, the tort of outrage requires a plaintiff to show that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Harrelson v. R.J.*, 882 So.2d 317, 322 (Ala. 2003) (quoting *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1043 (Ala. 1993)).  In seeking dismissal of this claim, defendants focus on the "extreme and outrageous" requirement, reasoning that nothing in the termination of plaintiff's employment could possibly be viewed as "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Baker v. State Farm General Ins. Co.*, 585 So.2d 804, 807 (Ala. 1991) (citation omitted).

Notwithstanding the high threshold of proof for an outrage cause of action, "Alabama courts have recognized the validity of such claims in the employment context in appropriate circumstances."  *Lees v. Sea Breeze Health Center, Inc.*, 391 F. Supp.2d 1103, 1107 (S.D. Ala. 2005); *see also American Road Service Co. v. Inmon*, 394 So.2d 361, 364 (Ala. 1981) (observing that "an employer, by virtue of his position, possesses no roving license to treat his employee in

an extreme and outrageous manner, whether before, during, or after their relationship").  That said, Alabama courts have stressed that "[i]t would be intolerable in a civilized society to hold that an employer is guilty of outrageous conduct for merely discharging an employee at will." *Smitherman*, 872 So.2d at 840 (quoting *Harrell v. Reynolds Metals Co.*, 495 So.2d 1381, 1387 (Ala. 1986)).  As the undersigned has previously observed in a published decision cited by defendants:

> "Review of pertinent Alabama authorities reveals that the line of demarcation between non-actionable outrage claims and actionable outrage claims in the employment arena is found in the determination of whether the termination is for reasons that contravene public policy. Where a plaintiff complains that her discharge contravenes public policy, particularly if the discharge was the culmination of a protracted pattern of discrimination in violation of public policy, she may properly pursue a claim of outrage because the violation of public policy furnishes the requisite 'sound of fury' to accompany the termination."

*Lees*, 391 F. Supp.2d at 1107 (citations omitted).  Hall's Complaint specifically pleads that Mobile Infirmary fired her for taking medical leave in order to undergo seven abdominal surgeries over an eight-month period, and further pleads that defendants' conduct in that regard violated the public policy of the State of Alabama.  In briefing the Motion to Dismiss, neither party recites any Alabama authority on the question of whether this type of conduct by an employer offends the public policy of the State of Alabama.  At this time, however, the Court cannot discount the possibility that it might.[8]  For that reason, dismissal of Count III on

---

[8]      The Court will not articulate plaintiff's theories of liability for her; however, it is noted that the federal Family and Medical Leave Act includes a provision rendering it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  29 U.S.C. § 2615(a).  If, for example, evidence developed in discovery demonstrated that Mobile Infirmary terminated Hall's employment in retaliation for her having taken or attempted to take an FMLA leave of absence for her abdominal surgeries, then plaintiff might have a compelling argument that she was discharged in violation of public policy, so as to give rise to a jury question on the outrage claim.  The Court declines to speculate further as to what the evidence might show or what plaintiff's exact outrage theory might be.  For now, it sufficient to find, and the undersigned does find, that it does not appear beyond doubt that Hall can prove no set of facts in support of her outrage claim which would entitle her to relief; therefore, defendants are not entitled to a Rule 12(b)(6) dismissal of Count III.  Plaintiff is cautioned, however, that her suggestion that she has an absolute right to have a jury decide whether the allegations of the Complaint rise to the level of outrage is not a

defendants' Motion is not appropriate.

> ### 4.     *Negligence/Wantonness (Count IV).*

Plaintiff's fourth cause of action alleges that defendants negligently and wantonly terminated her employment without first consulting Mobile Infirmary's employee handbook to ensure compliance with the termination provisions set forth therein.  Defendants articulate two reasons for dismissing this cause of action.  First, they assert that Hall's claim for negligent breach of contract against Mobile Infirmary cannot stand because it is inconsistent with her admission elsewhere in her Complaint that she was an at-will employee, such that she had no employment contract.  (Defendants' Brief, at 5.)  This contention ignores the well-established principle that a plaintiff may plead in the alternative, as Hall has done here.  *See DRC, Inc. v. Great American Ins. Companies*, 901 So.2d 710, 714 (Ala. 2004) (opining that inconsistent, alternative and hypothetical pleadings are permitted under Alabama rules).  In Count II of her Complaint, Hall adequately stated a claim for breach of termination procedures found in an employee handbook that was a unilateral contract, such that she has adequately pleaded the existence of a binding employment contract, irrespective of her allegations in the alternative elsewhere in the Complaint.  Defendants' consistency argument cannot prevail at the Rule 12(b)(6) stage.

Second, defendants argue that the negligence claim against defendants Burch and Gibson is foreclosed by *Norman v. Southern Guaranty Ins. Co.*, 191 F. Supp.2d 1321 (M.D. Ala. 2002).  But the excerpt from *Norman* on which movants rely discusses the Alabama Workers' Compensation Act's preemption of "causes of action against an employer under state law based on negligent harm inflicted on an employee by a co-employee."  *Id.* at 1336.  This passage says nothing about a plaintiff's ability to maintain negligence claims against other employees, and Alabama law is at odds with defendants' assertion.  *See Clark v. Floyd*, 514 So.2d 1309, 1319 (Ala. 1987) (doctrine that servant cannot recover for negligence of co-employee only precludes actions against employer, not against co-employee).  *Norman* cannot support defendants'

correct statement of law.  Without evidence that her termination proceeded in violation of public policy or was otherwise accompanied by the "sound of fury," this cause of action may not survive summary judgment scrutiny.

contention that Count IV must be dismissed as to defendants Burch and Gibson.[9]

For these reasons, defendants' arguments for dismissal of Count IV are not persuasive.[10]

     5.    *Negligent/Wanton Supervision (Count V).*

Plaintiff's fifth cause of action is a claim against defendants for negligent or wanton supervision. The gravamen of the claim is Hall's theory that Mobile Infirmary breached a duty properly to instruct, monitor, train and supervise Burch and Gibson in the terms, conditions and provisions of the employee handbook, proximately causing plaintiff's discharge.

As a threshold matter, defendants correctly note that Count V is nonsensical to the extent that it purports to state claims for negligent/wanton supervision against defendants Burch and Gibson; after all, they are the actors who allegedly committed the underlying torts, and these individual defendants can hardly be found liable for negligently or wantonly supervising themselves. Plaintiff makes no attempt to defend her pleading of Count V against Burch and Gibson in this fashion. Whatever plaintiff's reason for naming these defendants in Count V might be, her negligent/wanton supervision claims against Burch and Gibson are not cognizable, and are therefore due to be dismissed.

In seeking dismissal of this cause of action, Mobile Infirmary's principal contention is that plaintiff's claim of negligent supervision must fail because she has failed to identify any

---

    [9]    To be sure, the principles enunciated in *Norman* may have some bearing on Hall's ability to pursue negligence claims against Mobile Infirmary. However, movants have not made that argument, but have instead relied on *Norman* solely to attack plaintiff's negligence claims against the individual defendants. The Court will not evaluate arguments that defendants could have made, but elected not to make.

    [10]    In briefing their Motion to Dismiss, defendants do not invoke the Alabama doctrine that a mere failure to perform a contractual obligation generally does not amount to a tort. *See Barber v. Business Products Center, Inc.*, 677 So.2d 223, 228 (Ala. 1996) ("a mere failure to perform a contractual obligation is not a tort"); *but see Powers v. CSX Transp., Inc.*, 190 F. Supp.2d 1284, 1295 (S.D. Ala. 2002) (observing that Alabama recognizes exceptions to this rule); *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1067 (11th Cir. 1990) (characterizing Alabama law as holding that when one contracts with another and expressly promises to use due care or to do an act, he is liable in both tort and contract when his negligence injures the other party). As the parties have not addressed this line of cases in briefing the Motion to Dismiss, the Court will not unilaterally parse and apply these authorities to the allegations of Hall's Complaint.

actionable underlying tort committed by Burch and Gibson.  *See McKinnes v. American Int'l Group, Inc.*, 420 F. Supp.2d 1254, 1259 (M.D. Ala. 2006) (under Alabama law, "a company cannot be independently guilty of negligent or wanton hiring, training, or supervising in the absence of some tort committed by its employee against the plaintiffs"); *University Federal Credit Union v. Grayson*, 878 So.2d 280, 291 (Ala. 2003) ("a party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant's agents"). As the Court understands it, Mobile Infirmary's position is that if Burch and Gibson did not commit any tort recognized under Alabama law, then Mobile Infirmary cannot be liable to Hall for negligently or wantonly supervising Burch and Gibson.  The problem with Mobile Infirmary's argument is that in Count IV, Hall has pleaded an Alabama common-law claim against Burch and Gibson for negligent/wanton termination of her employment in contravention of the employee handbook terms, and defendants have presented no valid basis for deeming that theory not to be cognizable as a matter of Alabama law.[11]  Plaintiff having stated an underlying tort claim against Burch and Gibson in Count IV, the authorities on which defendants rely in no way preclude her from bringing a negligent/wanton supervision claim against Mobile Infirmary in Count V.

Mobile Infirmary's fallback contention as to this cause of action fares no better.  In that regard, Mobile Infirmary asserts that Count V should be dismissed because it fails to allege that Mobile Infirmary had notice or knowledge of any incompetency in Burch and Gibson.  It is a correct statement of Alabama law that a claim for negligent supervision requires a plaintiff to establish by affirmative proof that the master had actual knowledge of his servant's incompetence, or that he would have learned of such incompetence with the exercise of due and proper diligence.  *See, e.g., Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So.2d 665, 682 (Ala. 2001).  But Mobile Infirmary points to no authorities declaring that a plaintiff's failure

---

[11]     There is Alabama authority providing that employees are liable for their own torts committed against fellow employees in the employment arena.  *See Clark*, 514 So.2d at 1319 (stating general rule that a negligent employee is not immune from action brought by injured fellow worker who alleges breach of the employee's duty at common law, and recognizing that employees have duty to fellow workers that are injured or damaged as a result of employees' failure to use reasonable care in discharge of job responsibilities).

to plead actual knowledge or notice of incompetence is grounds for dismissing the Complaint under Rule 12(b)(6). Such a draconian result appears irreconcilable with the "notice pleading" tenets of Rule 8, which are unquestionably satisfied here; therefore, the Court will not dismiss Count V as inadequately pleaded.

Plaintiff's negligent/wanton supervision cause of action against Burch and Gibson is **dismissed**, but she will be allowed to proceed on this theory against Mobile Infirmary.

### 6.     Fraud (Count VI).

Count VI of the Complaint is a cause of action against all three defendants for fraud. Plaintiff theorizes that defendants falsely notified the Alabama Department of Industrial Relations that Hall had voluntarily quit her job, so as to disqualify her from unemployment benefits, when in fact Mobile Infirmary had fired her. The Complaint alleges that the Alabama Department of Industrial Relations relied on these false representations in denying plaintiff's claim for unemployment benefits.

Under Alabama law, the elements of a fraud cause of action are as follows: (1) defendant made a false representation, (2) the misrepresentation involved a material fact, (3) plaintiff relied on the misrepresentation, and (4) the misrepresentation damaged plaintiff. *See Baker v. Metropolitan Life Ins. Co.*, 907 So.2d 419, 420 (Ala. 2005); *Bryant v. Robledo*, 938 So.2d 413, 421 (Ala.Civ.App. 2005) (similar). In seeking dismissal of Count VI, defendants focus on the reliance element. Alabama courts construe that element as requiring a plaintiff to show that she relied on the misrepresentation. *See Bosarge Offshore, LLC v. Compass Bank*, 943 So.2d 782, 786 (Ala. 2006) (to recover for fraud, "the plaintiff must rely to his detriment upon those misrepresentations"); *Hunt Petroleum Corp. v. State*, 901 So.2d 1, 4 (Ala. 2004) ("An essential element of any fraud claim is that the plaintiff must have reasonably relied on the alleged misrepresentation.") (citation omitted). Simply put, "[r]eliance requires that the misrepresentation actually induced the injured party to change its course of action." *Hunt*, 901 So.2d at 4. Here, Hall does not allege that she relied on any false representations made by defendants to third parties concerning the nature of her separation; to the contrary, she could not rationally have relied on any such false representations because she had direct, first-hand knowledge of the true circumstances of her firing. On this basis, defendants contend that plaintiff has not stated an actionable claim for fraud because she cannot satisfy the reliance

element.

In a cursory rebuttal, plaintiff asserts that her fraud claim is authorized by *Thomas v. Halstead*, 605 So.2d 1181 (Ala. 1992), in which the Alabama Supreme Court recognized that, in certain limited circumstances, a plaintiff may sue for fraud based on misrepresentations made to a third party, rather than to the plaintiff directly. *Id.* at 1184-85. Hall would apparently suggest that *Thomas* excuses her from showing personal reliance on defendants' fraudulent statements foisted on the Alabama Department of Industrial Relations. In *Delta Health Group, Inc. v. Stafford*, 887 So.2d 887 (Ala. 2004), however, the court specifically limited the *Thomas* holding to preclude the expansive reading advocated by Hall. The *Delta* court explained that "we do not read *Thomas* as excusing a plaintiff from the requirement of establishing his reliance upon that misrepresentation. *Thomas* appears to contemplate that the plaintiff, in fact, has relied on the defendant's misrepresentation, even though the misrepresentation was made to another party." *Delta*, 887 So.2d at 1299. Clearly, then, *Thomas* in no way relieves plaintiff of her burden of showing that she relied on the alleged misrepresentations, irrespective of who the target or recipient of those misrepresentations was. Hall has not pleaded reliance and could not reasonably do so, given her first-hand knowledge of the true facts on the subject of the alleged misrepresentations made by defendants. Accordingly, plaintiff's fraud claim is fatally flawed, and fails to state a cause of action under Alabama law.

       *7.*     *Conversion/ERISA (Count VII).*

Plaintiff's seventh cause of action sounds in conversion and alleges that Mobile Infirmary wrongfully converted to its own use Hall's retirement contributions following the termination of her employment. The Court has already found, *supra*, that this claim is subject to ERISA superpreeemption.

Defendants now maintain that the complete preemption of Count VII by ERISA necessitates its dismissal. This argument misapprehends the meaning and effect of superpreemption. When a state-law claim is subject to ERISA superpreemption, that claim is not dismissed; rather, it is simply converted into a federal cause of action. *See Jones*, 457 F.3d at 1178 ("state law claims that seek relief available under ERISA are recharacterized as ERISA

claims and arise under federal law").[12]  The Court therefore rejects defendants' contention that ERISA preemption, in and of itself, compels the dismissal of Count VII.  As the foregoing authorities make clear, the effect of superpreemption is to transmute plaintiff's purportedly state-law claim in Count VII for recovery of retirement benefits into a federal ERISA claim.  Defendants have not argued that the claim presented in Count VII is not cognizable under ERISA; therefore, they have not shown that dismissal of that cause of action for failure to state a claim is warranted or appropriate at this time.[13]

> 8.      *Civil Conspiracy (Count VIII).*

Finally, plaintiff's eighth cause of action is styled as a claim for "Civil Conspiracy to Violate the Alabama Worker's Compensation Act."  The Complaint describes the alleged conspiracy as one among Mobile Infirmary and its employees to provide false, erroneous, or misleading information to the Alabama Department of Industrial Relations, so as to deprive terminated employees of unemployment compensation and reduce Mobile Infirmary's

---

[12]      *See also Ervast*, 346 F.3d at 1014 (explaining in ERISA context that "[s]uper preemption ... ***recharacterizes*** the state law claim into a federal claim under § 1132"); *Whitt*, 147 F.3d at 1329 ("State law claims that seek relief available under ERISA are recharacterized as ERISA claims and therefore arise under federal law."); *see generally Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 2063, 156 L.Ed.2d 1 (2003) (where a federal statute completely preempts state law, "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law"); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (explaining that complete preemption doctrine allows state law claim to be recharacterized as an action arising under federal law).

[13]      Defendants are perhaps better off with Count VII still in play than with it dismissed at this juncture.  After all, Count VII is the lone federal cause of action joined in these proceedings and represents the sole federal jurisdictional foothold.  If Count VII were dismissed, there would be no remaining federal claims and the undersigned would have discretion under 28 U.S.C. § 1367(c)(3) not to exercise supplemental jurisdiction over the remaining causes of action.  In that context, the Eleventh Circuit has "encouraged district courts [not to decide] any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004).  The likely end result would be remand of this action to state court.  *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1123 (11th Cir. 2005) ("Because this case was originally filed in state court and removed to federal court ..., if the district court declines to continue to exercise supplemental jurisdiction, Cook's remaining claim should be remanded to state court.").

unemployment tax exposure.  In furtherance of this conspiracy, it is alleged that defendants prepared false documents pertaining to Hall's eligibility for unemployment compensation, and transmitted such documents for the purpose of inducing the Alabama Department of Industrial Relations to deny Hall's claim for unemployment benefits.

Defendants maintain that Count VIII should be dismissed pursuant to the well-established principle that "[a] conspiracy cannot exist in the absence of an underlying tort."  *Avis Rent a Car Systems, Inc. v. Heilman*, 876 So.2d 1111, 1124 (Ala. 2003) (citation omitted). Indeed, "[l]iability for civil conspiracy rests upon the existence of the underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy."  *Id.* (citation omitted).  In the Complaint and in briefing the Motion to Dismiss, plaintiff has failed to identify any underlying tort that defendants allegedly conspired to commit.  From a careful reading of Count VIII, it appears that plaintiff is alleging that defendants conspired to commit fraud relating to unemployment compensation claims.  As stated with respect to Count VI, *supra*, however, Hall's purported fraud claim fails to satisfy Alabama's legal elements of fraud and therefore is not actionable, so any conspiracy claim predicated on a conspiracy to defraud plaintiff with respect to unemployment benefits cannot stand, either.  To the extent that Count VIII is intended to be a claim for conspiracy to violate the Alabama Workers' Compensation Act in unspecified respects, Hall has made no allegations and offered no arguments that might show how she could have standing to sue defendants for any such alleged violation.  Plaintiff having failed to identify any object of the conspiracy that might constitute an underlying actionable tort, her conspiracy claim set forth in Count VIII does not state a claim, as a matter of law.[14]

_____

[14]     An additional basis for dismissing Count VIII lies in the fact that the alleged conspirators consist of Mobile Infirmary, Burch and Gibson (who are Mobile Infirmary employees), and other "directors officers, agents, servants and employees of Defendant Mobile Infirmary."  (Complaint, ¶ 66.)  "A civil conspiracy requires a combination of two or more individuals to accomplish a lawful end by unlawful means."  *Callens v. Jefferson County Nursing Home*, 769 So.2d 273, 280 (Ala. 2000).  Straightforward application of the intracorporate conspiracy doctrine would foreclose any claim based on a conspiracy among Mobile Infirmary and its agents/employees.  *See Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) ("acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy," such that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of

**IV.**   **Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.      Plaintiff's Motion to Remand (doc. 9) is **denied** on the ground that federal question jurisdiction is conferred by the complete preemption of Count VII of the Complaint by ERISA.  Count VII is **recharacterized** as a claim under § 1132 of ERISA.

2.      Plaintiff's claims against fictitious defendants are **dismissed** on the ground that fictitious party practice is not generally permitted in federal court.

3.      Defendant's Motion to Dismiss (doc. 5) is **granted in part, and denied in part**. The Motion is **granted** with respect to Count I (wrongful discharge of at-will employee), the portion of Count II (breach of contract) and Count V (negligent/wanton supervision) purporting to state claims against Burch and Gibson, Count VI (fraud) and Count VIII (civil conspiracy), and each of those claims is **dismissed**.  The Motion is **denied** with respect to Count III (outrage), Count IV (negligence/wantonness), Count VII (ERISA), and the portions of Counts II and V stating claims against Mobile Infirmary.

4.      Pursuant to Rule 12(a)(4)(A), Fed.R.Civ.P., defendants are **ordered** to file their answer(s) to the Complaint on or before **March 23, 2007**.

DONE and ORDERED this 8th day of March, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

their employment, cannot conspire among themselves," as a matter of law); *Williams v. Marcum*, 519 So.2d 473, 475 (Ala. 1987) (explaining that there can be no conspiracy where only conspirators are corporation and its agents and corporations's liability is predicated on theory of respondeat superior through acts of agent with whom it allegedly conspired).  Thus, Count VIII would remain legally infirm even if plaintiff had properly pleaded or otherwise identified an underlying tort as the object of the alleged conspiracy.